IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| FRANCES PEARL ROBINSON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:22-cv-102-SMD |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|    Defendant. | ) |

## OPINION & ORDER

Plaintiff Frances Pearl Robinson ("Robinson") applied for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on April 10, 2020, alleging disability beginning March 11, 2019. Tr. 250-51. Robinson's application was denied at the initial administrative level. Tr. 22-30, 105. She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found on August 4, 2021, that Robinson was not disabled. Tr. 19-30. Robinson appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 1-6. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Robinson appeals under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned AFFIRMS

---

[1] On December 18, 2023, the United States Senate confirmed Martin O'Malley as Commissioner of the Social Security Administration. Thus, the Court substitutes O'Malley for his predecessor, Kilolo Kijakazi. *See* FED. R. CIV. P. 25(d)(1).

the Commissioner's decision.[2]

## I. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security disability benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

>   (1) Is the person presently unemployed?
>   (2) Is the person's impairment severe?
>   (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>   (4) Is the person unable to perform his or her former occupation?
>   (5) Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a), 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 15); Def.'s Consent (Doc. 14).

[3] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy he can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

---

[4] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

### III. ADMINISTRATIVE PROCEEDINGS

Robinson was 56 years old on her alleged disability onset date. Tr. 94. She graduated high school and has past relevant work experience as a dining room attendant, food service worker, customer service clerk, and companion. Tr. 29, 62-63, 206, 249. Robinson alleged disability due to Hepatitis C, arthritis, hypertension, bilateral carpal tunnel syndrome, neuropathy, Type II diabetes, tendonitis, "spinalnodsios" on lumbar region, thyroid disease, and chronic kidney disease. Tr. 248.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Robinson's disability determination. At step one, the ALJ found Robinson has not engaged in substantial gainful activity since her alleged onset date. Tr. 25. At step two, the ALJ found Robinson suffers from the following severe impairments: diabetes mellitus, degenerative disc disease, and right carpal tunnel syndrome. Tr. 25. At step three, the ALJ found Robinson does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 26.

The ALJ proceeded to determine Robinson's RFC, finding she has the capacity to perform light work, except she can lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours and stand and walk 4 hours; push and pull unlimited amounts within the limits for lifting and carrying; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance, kneel, and crouch and occasionally stoop and crawl; perform no more than frequent handling with her right hand; and tolerate no exposure to extreme cold, humidity, or vibration or to hazards, moving mechanical parts, and unprotected heights. Tr. 26. At step four, the ALJ found Robinson is able to perform past relevant work as a companion. Tr. 29-30. At step five, the ALJ found that Robinson was not disabled from her alleged onset date through the decision date. Tr. 30.

**IV.    ROBINSON'S ARGUMENTS**

Robinson presents four issues for review:

(1) Whether the ALJ failed to make the requisite findings concerning Robinson's past relevant work.

(2) Whether the ALJ's RFC finding is supported by substantial evidence.

(3) Whether the ALJ erred in his evaluation of Robinson's statements regarding the nature and limiting effects of her symptoms.

(4) Whether an individual with Robinson's vocational profile, if unable to perform past relevant work and limited to a full range of work Grid Rule 202.06, directs a finding of "disabled."

Pl.'s Br. (Doc. 16) at 1. As explained below, the undersigned finds that the ALJ did not commit reversible error.

V.  ANALYSIS

   1. **Whether the ALJ failed to make the requisite findings concerning Robinson's past relevant work.**

Robinson argues that the ALJ erred in determining that she is able to return to her past relevant work. Pl.'s Br. (Doc. 16) p. 5. Specifically, Robinson alleges that the ALJ did not perform a "'careful appraisal' of [her] statements regarding her inability to return to her work as a Companion." Pl.'s Br. (Doc. 16) p. 5. Robinson also argues that "the ALJ failed to obtain *detailed* information about the physical and mental requirements of [her] work as a Companion." Pl.'s Br. (Doc. 16) p. 6. Finally, Robinson argues that the ALJ made a general statement regarding Robinson's ability to perform past relevant work instead of comparing Robinson's RFC with the "physical and mental demands of [her] past relevant work." Pl.'s Br. (Doc. 16) p. 7 (quoting 20 C.F.R. § 404.1560(b)).

The claimant bears the burden of proving her inability to perform her past relevant work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). However, "the Secretary has an obligation to develop a full and fair record." *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) (quoting *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987)). To determine a claimant's ability to do past relevant work, the ALJ must, *inter alia*, perform "a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements." *Martin v. Saul*, 2020 WL 3454571, at *4 (S.D. Ga. June 5, 2020), *report and recommendation adopted*, 2020 WL 3454995 (S.D. Ga. June 24, 2020) (quoting SSR 82–62). The ALJ "may rely on the knowledge or expertise of a VE in determining whether

there are jobs a claimant can perform," including "whether past relevant work can be done." *Id.* "Where there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the Secretary cannot properly determine whether the claimant has the residual functional capacity to perform his past relevant work." *Waldrop*, 379 F. App'x at 953 (quoting *Schnorr*, 816 F.2d at 581).

Here, the ALJ did not err in determining that Robinson could return to her past relevant work as a companion. In making this finding, the ALJ relied on testimony from the VE that "the job of companion [i]s performed at the light exertional level and is semi-skilled in nature" and "an individual with [Robinson's] [RFC] could perform the . . . job of companion." Tr. 29. The VE relied on the Dictionary of Occupational Titles ("DOT"), which classifies the job of "companion" as requiring light work. DOT 309.677-010. Specifically, the job description does not require work beyond "[e]xerting up to 20 pounds of force occasionally . . . and/or up to 10 pounds of force frequently" and frequent handling. *Id.* The job description does not require climbing, balancing, stooping, kneeling, crouching, crawling, exposure to extreme cold, extreme heat, wetness and/or humidity, moving mechanical parts, or being in high exposed places. *Id.* Because these requirements do not exceed the ALJ's RFC finding, the ALJ's determination that Robinson can perform past relevant work was not in error. And as the Commissioner notes, although the ALJ did not solicit "testimony about how long the position required [Robinson] to perform certain exertional, postural, and manipulative activities," Resp. (Doc. 17) p. 5, the DOT provision includes much of that information. Furthermore, although Robinson notes that the DOT

7

provision requires frequent reaching, handling, and fingering, those requirements are consistent with the RFC's limitations.

To be sure, Robinson testified that as a companion, she did some cooking and assisted clients with bathing. Tr. 50. In doing so, she occasionally had to lift some of her clients but did not do so often because she "couldn't do that much lifting." Tr. 50. Robinson's testimony indicates that her job duties fell within the limits of the RFC. As such, the ALJ did not err in determining that Robinson could perform her past relevant work as a companion.

### 2. Whether the ALJ's RFC finding is supported by substantial evidence.

#### A. Whether the ALJ provided a sufficient summary of the medical evidence.

Robinson argues that the ALJ did not provide a "sufficient summary" of the medical evidence and instead "ignored much of the evidence that supported [her] statements regarding the nature and limiting effects of her impairments." Pl.'s Br. (Doc. 16) p. 8 (citing *Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1374 (N.D. Ga. 2006)). Specifically, Robinson alleges that the ALJ did not address, *inter alia*, x-rays of her left hand, previous medical treatment, physician notes stating that Robinson needed to be referred to specialists, which would be an out-of-pocket expense for her, self-reports of leg, neck, and back pain, results of bone density studies, and results of MRIs. Pl.'s Br. (Doc. 16) pp. 8-9. In essence, Robinson asks the Court to reweigh the evidence and to reach a different conclusion than the ALJ regarding her limitations.

Determining a claimant's RFC is an issue reserved for the Commissioner. *Pate v. Comm'r of Soc. Sec.*, 678 F. App'x 833, 834 (11th Cir. 2017) (citing 20 C.F.R. § 404.1527(d)(2)). When making an RFC determination, an ALJ must consider the claimant's medical condition as a whole and must provide a sufficient rationale to link the evidence to his RFC determination so that a court may conduct a meaningful review of his findings. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Tauber*, 438 F. Supp. 2d at 1374 (quoting Social Security Ruling 96–8p). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" as long as the decision is not "a broad rejection" that casts doubt on whether the ALJ considered the claimant's "medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Here, substantial evidence supports the ALJ's RFC finding—i.e., that Robinson can perform light work with limitations. The ALJ discussed Robinson's statements about her symptoms, her medical test results, and her physical examination results. The ALJ also evaluated the persuasiveness of the medical opinions. Based on Robinson's statements, test results, and medical opinions, the ALJ found that although Robinson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 27. Specifically, the ALJ found that Robinson's "statements about the intensity, persistence, and limiting effects of . . . her symptoms . . . are inconsistent because the evidence does not support finding [she] requires assistance with her personal care and dressing, or her reported inability to lift and use her hands." Tr. 27. The ALJ also found that "[a]lthough findings on MRIs of the cervical and lumbar spine reveal degenerative changes, the evidence does not show [Robinson] required treatment beyond medication management, and she was not referred to pain management or physical therapy." Tr. 27. And while Robinson points to evidence that could support her allegations of disability, the evidence does not undermine the substantial evidence showing that the ALJ considered Robinson's medical conditions as a whole. As such, the undersigned finds that the ALJ provided a sufficient summary of the medical evidence in determining the RFC although he did not cite to all the evidence in the record.[6]

## B. Whether the ALJ mischaracterized parts of the record.

Additionally, Robinson argues that "the ALJ mischaracterized several aspects of the medical record." Pl.'s Br. (Doc. 16) p. 10. Specifically, Robinson argues that the ALJ (1) "characterized cervical X-rays as an MRI"; (2) incorrectly stated that those cervical X-rays were performed during a November 2020 emergency room visit, when they were actually

---

[6] The Court also notes that the ALJ's RFC finding was not a categorical assessment that Robinson could perform light work and instead included specific limitations tailored to her conditions. This further supports the conclusion that the ALJ's RFC finding is supported by substantial evidence. *See Tauber*, 438 F. Supp. 2d at 1374 (stating that the ALJ's RFC determination, which included limitations and was not merely "a conclusory, categorical RFC assessment" or "a simple, broad statement that the Claimant could perform the full range of light work," indicated that substantial evidence supported the RFC finding).

done on November 3, 2020, after Robinson reported increased neck pain the month before; (3) downplayed Robinson's right ankle impairment as "degenerative changes without acute abnormalities" as shown by x-rays and characterized this issue as a soft tissue condition when Robinson actually has talocalcaneal coalition, a diagnosis that was supported by a March 2021 MRI that showed "cartilaginous or fibrous talocalcaneal tarsal coalition"; and (4) failed to discuss "Robinson's left-hand impairment/symptoms," including a "possible foreign body near the 3rd finger, osteopenia and degenerative changes," for which she was treated in early 2019 and saw an orthopedist. Pl.'s Br. (Doc. 16) p. 10.

Robinson does not argue how these misrepresentations, had they been accurately described in the ALJ's opinion, would change the RFC determination. Robinson bears the burden of proving disability,[7] and because she has not shown—and the Court does not see—how this evidence undermines the substantial evidence supporting the ALJ's RFC determination or leads to a different administrative result, the undersigned finds that any mischaracterization of the record is harmless.

### C. Whether the state agency consultants' medical opinions are persuasive.

Robinson argues that the state agency consultants' medical opinions, which the ALJ found persuasive, "were neither supported nor consistent with the record as a whole." Pl.'s Br. (Doc. 16) p. 11. However, she does not point to any evidence contrary to the ALJ's conclusion that the opinions were "consistent with and supported by the totality of the

---

[7] *Sneed v. Berryhill*, 2017 WL 1230849, at *6 (M.D. Ala. Mar. 31, 2017) (quoting *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)).

evidence that fails to show significant limitations that would support finding more restrictive limitations." Pl.'s Br. (Doc. 16) p. 11 (quoting Tr. 29). Therefore, Robinson has not shown that the ALJ erred in finding the state agency consultants' opinions consistent with and supported by the record.[8]

### D. Whether the ALJ considered Robinson's impairments in combination.

Robinson argues that "there is no evidence that the ALJ considered [her] impairments in combination when evaluating [her] statements or formulating his RFC." Pl.'s Br. (Doc. 16) p. 11. Robinson contends that "the ALJ failed to account for the impairments he considered to be 'non-severe' at Step-2, including Chronic Kidney Disease, Gout, Right ankle condition, and Obesity," even though "[s]everal of [] Robinson's impairments are inextricably intertwined." Pl.'s Br. (Doc. 16) p. 12. Specifically, Robinson contends that the ALJ failed to consider that: (1) "treatment notes indicate [] Robinson's hypertension caused her CKD, and at the same time indicated CKD caused her hypertension"; (2) "CKD eventually caused Chronic gout with foot and leg pain"; and (3) Robinson's gout and right ankle impairment "paired with limited walking and standing as a result of Lumbar stenosis and Lumbar radiculopathy would drastically limit her ability to walk and stand." Pl.'s Br. (Doc. 16) p. 12. Additionally, Robinson asserts that the ALJ "did

---

[8] It appears that Robinson may be attempting to argue that the opinions of her treating physicians and nurse practitioner are contrary to the state agency consultants' opinions because they provide additional limitations that were not accounted for in the RFC. But Robinson has not shown how these opinions undermine the ALJ's consistency or supportability findings for the opinion of the state agency consultants. Thus, the undersigned finds that Robinson has not shown that the ALJ erred in finding the state agency consultants' opinion persuasive simply because the opinion of her treating physician and nurse practitioner may include different or additional limitations.

not substantively consider [her] obesity" and "never explained why he disregarded references of 'problems or exacerbations of a body system as a result of obesity.'" Pl.'s Br. (Doc. 16) p. 12.

Here, at step three, the ALJ found that Robinson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 26. In reaching this conclusion, the ALJ examined Robinson's diabetes mellitus, back pain, carpal tunnel syndrome, and degenerative disc disease. Tr. 28-29. Then, at step four, after considering Robinson's allegations, medications, medical evidence, activities of daily living, and opinion evidence, the ALJ found that Robinson has the RFC to perform light work with additional limitations, including a limitation on handling with her right hand and exposure to certain situations. During this discussion, the ALJ addressed Robinson's non-severe impairments, including her CKD, gout, right foot and ankle impairments, and obesity specifically. Tr. 27. Thus, the ALJ's statement that Robinson did not have an impairment or *combination of impairments* that established disability, coupled with his thorough discussion of Robinson's impairments during the RFC determination, is sufficient to conclude that the ALJ generally considered the combined effects of Robinson's impairments. *See Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986) (holding that the ALJ's explicit statement that the claimant did not suffer from a combination of impairments rendering him disabled, coupled with an "exhaustive consideration" of the claimant's impairments in formulating the RFC at step four, was sufficient to satisfy the ALJ's duty to make specific and well-articulated findings as to the effect of the combination of impairments).

Accordingly, the undersigned finds that substantial evidence supports the ALJ's consideration of Robinson's impairments, including her diabetes, degenerative disc disease, and right carpal tunnel syndrome. As such, the ALJ did not err.

### 3. Whether the ALJ erred in his evaluation of Robinson's statements regarding the nature and limiting effects of her symptoms.

Robinson alleges that the ALJ did not adequately consider her subjective statements under the two-part tests laid out in 20 C.F.R. § 404.1529(c) and by the Eleventh Circuit. Pl.'s Br. (Doc. 16) p. 13. Specifically, she asserts that "the ALJ's articulated reasons for discounting [her] statements were not supported by the evidence." *Id.* p. 14.

A Social Security claimant may prove disability through subjective testimony about her symptoms. *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 (11th Cir. 2014). To establish disability through subjective complaints, a claimant must provide: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence meeting this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted). In evaluating a claimant's subjective symptoms, the ALJ may consider a variety of factors, including: objective medical evidence, treatment history, response to medication and other treatments, sources of pain relief, and the claimant's daily activities. *See* 20 C.F.R. § 404.1529(c)(1)-(4). If an

ALJ rejects a claimant's testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225.

Here, the ALJ reviewed Robinson's complaints and found that Robinson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 27. Prior to reaching this finding, the ALJ summarized Robinson's subjective complaints about her alleged disability. Tr. 28. Specifically, the ALJ noted that Robinson "stated that she does not drive because of problems with her neck"; "fell at work three or four years ago while working as a CAN, and has been unable to work"; "is no longer able to stand to perform her job, cannot sit for long periods, has back pain and cannot use her hands"; "requires assistance with showering, bathing and dressing with some items, such as putting on pants"; "no longer cooks because she cannot hold items as she used to, and cannot lift heavy items"; "reports limitations with squatting, bending, reaching, kneeling and using her hands"; and "reports that she sometimes uses a cane, brace/splint." Tr. 27.

In finding her subjective complaints inconsistent with the record, the ALJ carefully detailed the medical evidence that undermined her claims of disability. Tr. 28-29. The ALJ explained that Robinson reported low back pain to her primary care physician on June 6, 2019, for which "[s]he had already been prescribed Neurontin, and received a Kenalog injection on this date." Tr. 29. However, the ALJ also noted that "during a July 5, 2019 physical examination with her PCP, the musculoskeletal portion shows normal range of

15

motion with no tenderness." Tr. 28. The ALJ determined that Robinson experienced a "pattern of waxing and waning symptoms" relating to her back pain until May 2020. Tr. 28. However, Robinson "mostly" did not report symptoms and often displayed normal range of motion with no tenderness upon examination. Tr. 28. The ALJ also noted that Robinson's medical scans showed degenerative changes, but "the evidence does not show [Robinson's] back impairment involved the nerves of the lumbar spine, caused loss of sensation in the lower extremities, required her to use an assistive device, caused muscle weakness or abnormal sensation or reflexes." Tr. 28. The ALJ also noted that Robinson did not require or receive significant treatment for her carpal tunnel syndrome.[9] Tr. 28-29.

Moreover, the ALJ discussed Robinson's response to medication regarding her physical impairments. The ALJ noted that Robinson was prescribed Neurontin, which was later replaced by Amitriptyline, for carpal tunnel syndrome. Tr. 29. However, "the evidence does not indicate [Robinson] required or received further treatment for these impairments, or reported significant limitations related to symptoms related to these impairments to her treating physicians." Tr. 29.

Finally, the ALJ considered Robinson's daily activities and concluded that these reports undermined her claims of disability. The ALJ observed that Robinson "reported the ability to drive two-to-three times a week to go to the store or doctor's appointment," "perform activities of daily, lift a gallon of milk and has done laundry," and "can dress

---

[9] As Robinson pointed out, the ALJ did not indicate that Robinson was referred to a neurosurgeon but was unable to make a neurosurgery appointment because it would be an out-of-pocket expense. *See* Pl.'s Br. (Doc. 16) pp. 3, 9 (citing Tr. 352, 634-35, 640).

independently." Tr. 28. And the ALJ noted that Robinson "has not been prescribed any aids, such as a back brace or assistive device for ambulation." *Id.*

Robinson contends that the ALJ made impermissible negative inferences about her lack of treatment for her neck pain and carpal tunnel syndrome in her right hand by asserting that "the evidence does not indicate [Robinson] required or received further treatment for these impairments." Tr. 29. "When a claimant cannot afford medical treatment, an ALJ should not draw a negative inference from the claimant's failure to seek additional treatment." *Busha v. Saul*, 2021 WL 3617700 (N.D. Ala. Aug. 16, 2021). "However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists." *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015)). Here, as discussed above, the ALJ's determination was based on other medical evidence, including Robinson's response to medication, her daily activities, and the waxing and waning of her symptoms. Therefore, even if the ALJ impermissibly drew a negative inference from Robinson's lack of treatment, the error is harmless.

Because the ALJ explicitly discussed the objective medical evidence, Robinson's treatment history, her response to medication, and her daily activities as he was required to do, the Court finds the ALJ properly evaluated Robinson's subjective complaints. *See* 20 C.F.R. § 404.1529(c)(1)-(4). Therefore, the undersigned finds that substantial evidence supports the ALJ's determination.

> **4. Whether an individual with Robinson's vocational profile, unable to return to her past relevant work, would be disabled under Grid Rule 202.06 if limited to a full range of light work.**

Robinson briefly argues that "[t]he Medical-Vocational Guidelines would direct a finding of 'disabled,'" Pl.'s Br. (Doc. 16) p. 15 (citing Grid Rule 202.06, Appendix 2 to Subpart P, Part 4), and "[t]he ALJ's finding to the contrary is not supported by substantial evidence." *Id.* However, because Robinson does not support this conclusory allegation or point to specific errors, she has waived this issue. *See Ryerson v. Saul*, 2021 WL 1192993, at *6 (N.D. Ala. Mar. 30, 2021) (citing *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) ("holding that claimant waived issue because he did not elaborate on claim or provide citation to authority supporting it").

## VI. CONCLUSION

As explained above, the undersigned finds that the ALJ did not commit reversible error and that substantial evidence supports the Commissioner's decision. Accordingly, it is ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 27th day of February, 2024.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE